UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **KEYERA ENERGY INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 4:22-cv-2919 |
| § | |
| **PETROLAMA ENERGY CANADA INC.,** § | |
| *AND* **BB ENERGY USA LLC,** § | |
| § | |
| Defendants. § | |

# COMPLAINT

Plaintiff KEYERA ENERGY INC., for its cause of action against Defendants PETROLAMA ENERGY CANADA INC., and BB ENERGY USA LLC, hereby alleges and states as follows:

## PARTIES

1. Plaintiff KEYERA ENERGY INC. ("Keyera") is a Delaware corporation with its principal place of business in Houston, Texas.

2. Defendant PETROLAMA ENERGY CANADA INC. ("PetroLama") is incorporated in Alberta, Canada and has its principal place of business in Calgary, Alberta, Canada. PetroLama may be served through its Texas registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3. Defendant BB ENERY USA LLC ("BB Energy") is a Delaware limited liability company. BB Energy is a wholly owned subsidiary of BB Energy Holdings N.V., which is a foreign corporation organized under the laws of Curaçao and with its principal place of business

in Curaçao. BB Energy may be served through its Texas registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), (2), and/or (3), given that the parties are entirely diverse and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

5. The citizenships of the parties are **Delaware** and **Texas** (Keyera) *versus* **Canada** (PetroLama) and **Curaçao** and/or **United Arab Emirates** (BB Energy). As to the citizenship of the parties, Keyera would specifically allege and show:

    a. *Keyera Energy Inc.* Keyera is a corporation. Pursuant to 28 U.S.C. § 1332(c): "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." Keyera is incorporated in the State of Delaware. Keyera's principal place of business is in Houston, Texas. *See Hertz Corp. v. Friend,* 559 U.S. 77, 81 (2010) (principal place of business is "nerve center" where "the corporation's high-level officers direct, control, and coordinate the corporation's activities."). Keyera is therefore a citizen of **Delaware and Texas** for diversity jurisdiction purposes.

    b. *PetroLama Energy Canada Inc.* PetroLama is a foreign corporation. It is incorporated in Alberta, Canada. Similarly, PetroLama's principal place of business is in Calgary, Alberta, Canada. PetroLama is therefore a citizen of its foreign state, **Canada**, for diversity jurisdiction purposes.

  c. <u>BB Energy USA LLC.</u> BB Energy is a Delaware limited liability company. It is jurisdictionally irrelevant that BB Energy was formed in Delaware because the "citizenship of an LLC is determined by the citizenship of each of its members." *See Greenwich Ins. Co. v. Capso Indus. Inc.,* 934 F.3d 419, 422 (5th Cir. 2019). BB Energy is a wholly owned subsidiary of BB Energy Holdings N.V. An "N.V." abbreviation is for the Dutch phrase *naamloze vennootschap*, and is a common business structure in Dutch or Dutch-influenced nations. An N.V. entity is most like a domestic public company or corporation. An N.V. should be treated by this Court, and has been treated by other courts,[1] for diversity citizenship purposes as a corporation. BB Energy Holdings N.V. is incorporated in Curaçao. Its "nerve center" principal place of business is also within Curaçao or alternatively, on information and belief, Dubai, United Arab Emirates.[2] BB Energy is therefore, for diversity jurisdiction purposes, a citizen of **Curaçao and/or Dubai**.

6. This Court has personal jurisdiction over PetroLama and BB Energy as both are registered to do business within the State of Texas and subjected themselves to the jurisdiction of

---

[1] *See, e.g., Stockton v. CNH Indus. Am., LLC*, No. 16-CV-464-GKF-PJC, 2016 WL 11430713 (N.D.Okla. Sept. 29, 2016)(noting that the N.V. defendant "was ***incorporated*** under the laws of the Netherlands as a naamloze vennootschap, and other federal courts have treated Netherlands N.V.'s as corporations for the purposes of diversity jurisdiction analysis"); *De Wit v. KLM Royal Dutch Airlines, N.V.*, 570 F.Supp. 613, 616 (S.D.N.Y. 1983)(finding KLM to be a "Dutch corporation"); *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014) (similar B.V. corporation). The Internal Revenue Service similarly treats N.V. entities as corporations for taxation purposes. *See* 26 C.F.R. § 301.7701-2(b)(8)(i).

[2] BB Energy Holdings N.V.'s business address is listed as "Van Engelenweg 23, Curaçao" on Page 62 of BB Energy's 2022 Brochure available online at https://www.bbenergy.com/brochure/mobile/index.html. On information and belief, if BB Energy contends its principal place of business is not in Curaçao, Keyera alternatively alleges that it would then be in Dubai, United Arab Emirates, which is the worldwide business office of the ultimate parent company, BB Energy Group Holding Ltd., at DIFC, Emirates Financial Towers, South Tower, Unit S2102, Level 21, P.O. Box 340808, Dubai– UAE.

courts within Texas. This Court further has personal jurisdiction because both have either conducted a substantial amount of business in Texas, have or recently had offices and employees within the State of Texas, have purposefully availed themselves of the rights, benefits, and obligations of conducting business in Texas, have continuous, systematic contacts with Texas, and are otherwise at home and constitutionally subject to personal jurisdiction within the State of Texas. Further, PetroLama has also contractually agreed to submit to the personal jurisdiction of state or federal courts within Harris County, Texas in one or more of the contracts underlying this matter.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c). Specifically, as to both PetroLama and BB Energy, for § 1391 venue purposes, under (c)(2) both are defendant entities with the capacity to sue and be sued in their common names and therefore reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question;" Because each are corporate entities with locations appearing within this judicial district, venue is proper under 28 U.S.C. § 1391(b)(1). Alternatively, if the Defendants contend they are non-residents of this district, then under Section 1391(c)(3) they are considered non-residents in the United States and therefore may be sued in any judicial district, including this judicial district. Finally, PetroLama has also contractually agreed to venue within this district in one or more of the contracts underlying this matter.

## FACTUAL BACKGROUND

8. Keyera is the operator of the Wildhorse Terminal in Cushing, Oklahoma ("Wildhorse Terminal").

9. The Wildhorse Terminal is a new-build crude oil storage and blending facility that includes 12 above-ground tanks with a working storage capacity of 4.5 million barrels. Operations at Wildhorse Terminal commenced on or about July 20, 2021 (the "Operational Date").

A. *PetroLama's Default*

10. PetroLama's business primarily focuses on trading crude oil throughout the United States and Canada.

11. On May 14, 2018, Keyera and PetroLama entered into that certain Crude Oil Storage Agreement for Keyera to provide 1,000,000 barrels of working storage capacity to PetroLama for a term of 6 years from the Operational Date.

12. On May 15, 2018, Keyera and PetroLama entered into a second Crude Oil Storage Agreement for Keyera to provide another 1,000,000 barrels of working storage capacity to PetroLama for a term of 4 years from the Operational Date. (For all material purposes here and unless otherwise expressly noted, the terms of the two Crude Oil Storage Agreements are identical and they are collectively referred to as the "PetroLama Storage Agreements.") PetroLama's 2,000,000 barrels of Customer Capacity is reserved in tanks 201, 202, 204, 214, and 216 at the Wildhorse Terminal.

13. Under the PetroLama Storage Agreements: "The storage fee shall be thirty-five cents ($0.35) per working Barrel per month (the "Storage Fee") and shall be applied to the entire Customer Capacity and payable regardless of the volume of Product received or delivered pursuant to this Agreement." *See* PetroLama Storage Agreements at ¶ 5.1.

14. Shortly after the Operational Date, PetroLama commenced storing some crude oil at the Wildhorse Terminal under its 2,000,000 barrels of Customer Capacity.

15. However, PetroLama never paid its Storage Fees despite storing crude at the Wildhorse Terminal, and despite Keyera's monthly invoices to PetroLama.

16. On September 2, 2021, Keyera sent PetroLama a Notice of Customer Event of Default which detailed, among other things, two breaches by PetroLama of the PetroLama Storage Agreements: (1) failure to provide a letter of credit in favor of Keyera for 9 months of Storage Fees as required by Article 12 of the PetroLama Storage Agreements; and (2) failure to pay the Storage Fees that were then due, i.e., pro-rated Storage Fees for July 2021 ($264,193.55) .

17. Under the PetroLama Storage Agreements: a "Customer Event of Default" includes "failure by Customer to pay any undisputed amount due to Provider under this Agreement within ten (10) business days after the date of a written notice from Provider that Customer has failed to pay such amount when due." *See* PetroLama Storage Agreements at ¶15.2.

18. In accordance with the PetroLama Storage Agreements, Keyera requested in the Notice of Customer Event of Default that PetroLama cure its defaults by (1) providing a letter of credit in favor of Keyera as required by Article 12 of the PetroLama Storage Agreements within 10 days; and (2) paying its overdue Storage Fees within 10 business days.

19. PetroLama did not then, or thereafter, cure its defaults; it has made no payments of any Storage Fees to Keyera, nor has it provided the requisite letter of credit.

20. On or about October 13, 2021, Keyera sent a supplemental Notice of Customer Event of Default informing PetroLama that it had materially breached certain obligations under each PetroLama Storage Agreement by having failed to make payments for Storage Fees owed for July 2021 and August 2021, totaling $946,693.55, and by having failed to provide adequate financial assurances as required under the PetroLama Storage Agreements.

21. At all material times, despite the Customer Event of Default and PetroLama's material breach of the PetroLama Storage Agreements, Keyera made good faith efforts to arrange a commercial resolution of the issues with PetroLama.

22. On July 8, 2022, Keyera again sent a demand letter to PetroLama concerning the continuing material breach.

23. As noted in that second default notice, "Although PetroLama has availed itself of crude storage services at the [Wildhorse] Terminal, no Storage Fees have been paid from July 2021 through May 2022," resulting in a total past due amount of $7,089,193.55.

24. The amount past due continues to increase each month, and as of the date of this filing, PetroLama has paid no past due Storage Fees.

25. The PetroLama Storage Agreements expressly incorporate into their terms the Terminal Rules for the Wildhorse Terminal as may from time to time be amended, which provide, among other things, at ¶ 21 for a warehouse lien in favor of Keyera with respect to Product stored by PetroLama at the Wildhorse Terminal:

> OPERATOR'S LIEN. Customer [*i.e.*, PetroLama] hereby acknowledges Operator's [*i.e.*, Keyera's] statutory lien rights on Customer's Product under Section 7-209 of the Unform Commercial Code as well as Operator's other lien rights at law or in equity. In connection therewith, Customer agrees that Operator's monthly invoices constitute a bill of lading and a warehouse receipt and set forth the location where Customer's Product is stored, the date of receipt of Product, the applicable Fees for storage and/or terminalling and a general description of Customer's Product.

26. PetroLama failed to respond to Keyera's July 8th demand letter or to cure or correct its defaults under the PetroLama Storage Agreements.

27. Pursuant to ¶ 21 of the Terminal Rules, as incorporated into the PetroLama Storage Agreements, Keyera has a contractual and statutory warehouse lien on the Product stored in tanks 201, 202, 204, 214, and 216 at the Wildhorse Terminal.

B. *BB Energy's Interest*

28. BB Energy also trades crude oil and is another customer of Keyera's at the Wildhorse Terminal.

29. Under a separate Crude Oil Storage Agreement made effective June 15, 2018, with Keyera (the "BB Energy Storage Agreement"), BB Energy has contracted for the right to store as much as 1,000,000 barrels of Product serviced through tanks 203 and 206 at the Wildhorse Terminal.

30. On November 30, 2021, after Keyera's two Notices of Customer Event of Default were transmitted to PetroLama, and while the material breach of the PetroLama Storage Agreements was ongoing, PetroLama sent written notice to Keyera that "BB Energy purchased and owns the crude oil currently stored in PetroLama Energy Canada Inc. tanks located at the Wildhorse Terminal in Cushing, Ok." The letter went on to identify the tanks and approximate holdings as follows:

| | |
|---|---|
| Tank # 216 | ~47,050 bbls Heavy |
| Tank # 214 | ~44,400 bbls Heavy |
| Tank # 204 | ~33,650 bbls Heavy |
| Tank # 202 | ~60,550 bbls Heavy |
| Tank # 201 | ~84,500 bbls Light |
| Terminal Line Fill | ~4,600 bbls Heavy |
| Heavy Total = | ~190,000 bbls |
| Light Total = | ~84,500 bbls |

(the "Crude Storage Notice").

31. A copy of the Crude Storage Notice was also transmitted to representatives, one or more, of BB Energy on that same date.

32. At no time material to the claims asserted in this action did Keyera ever receive, or did PetroLama or BB Energy deliver, any formal, contract-compliant transfer documentation that purported to transfer title in and to the Disputed Oil, as defined herein, from PetroLama to BB Energy as may have been authorized under the Storage Agreements or the Terminal Rules.

33. In receipt of the Crude Storage Notice, Keyera was informed that the crude oil sitting in PetroLama's tanks at the Wildhorse Terminal had putatively been purchased by BB Energy but remained in PetroLama's possession, and was entrusted to PetroLama and its possession, for storage purposes in PetroLama's assigned tanks at the Wildhorse Terminal.

34. Invoices for Storage Fees for the crude oil stored in PetroLama's assigned tanks at the Wildhorse Terminal, one or more, which were agreed to constitute warehouse receipts under the PetroLama Storage Agreements, were issued by Keyera and delivered to PetroLama with respect to the crude oil stored in its assigned tanks at the Wildhorse Terminal, both before and after receipt of the Crude Storage Notice ("Invoices").

35. Such Invoices were never paid, and the crude oil stored in PetroLama's assigned tanks serves as security for the payment of Keyera's warehouse lien against such Product.

36. The crude oil remains in the PetroLama-assigned tanks at the Wildhorse Terminal, and its proper disposition is the subject of this suit.

C.   *Storage Agreement Terms*

37. Section 10.1 of the PetroLama Storage Agreements and the BB Energy Storage Agreement all provide in relevant part as follows:

> Title; Custody. Customer must have good and merchantable title to all Product delivered to the Terminal by it or on its behalf. Provider

> may reject any deliver of Customer's Product that Provider reasonable determines may be involved in litigation or involved in a title dispute. Title to the Product stored and/or handled hereunder will always remain with Customer.

38. Section 10.2 of the PetroLama Storage Agreements and the BB Energy Storage Agreement all provide in relevant part as follows:

> <u>Transfers of Product</u>. Customer may transfer title to Customer's Product via a title transfer request to another Customer at the Terminal with sufficient storage capacity. Customer's title transfer request shall be an executed document that indicates the party to which the transfer is to be made, the amount of Product to be transferred, its location and grade, and a warranty statement of unencumbered title to the Product to be transferred. Notwithstanding the above, Provider shall be under no obligation to recognize intrasystem transfers….

39. Section 15.2(b) of the PetroLama Storage Agreements and the BB Energy Storage Agreement all provide in relevant part as follows:

> If a Customer Event of Default as defined in Section 15.2(a) occurs:
>
> (i) Provider may suspend the performance of all or any part of the Terminal Services for so long as the breach continues…

40. Section 5(a) of the Additional Terms and Conditions attached to and made part of the PetroLama Storage Agreements and the BB Energy Storage Agreement provides in applicable part:

> <u>Linefill and Tank Bottoms.</u> Customer shall be responsible for providing sufficient Product to maintain all minimum tank operating levels and linefill inventory associated with the tankage and related piping within the Terminal.

41. Paragraph 5 of the Terminal Rules then provides in applicable part:

> <u>Crude Oil Nominations</u>
> Customer shall submit its crude oil nomination which shall include its good faith estimate of crude oil volumes for the months of receipt into, or delivery out of tank storage in its crude oil nomination to

>Operator by 2:00PM Central time on the 25th day of the month preceding the month of delivery or receipt at Wildhorse Terminal….
>
>If Operator determines, acting in a commercially reasonable manner, that it can accommodate the crude oil nomination, the crude oil nomination will be accepted. If Operator determines, acting in a commercially reasonable manner, that it cannot accommodate the crude oil nomination or the crude oil nomination is otherwise not acceptable, or Operator is unable to confirm the crude oil nomination with the applicable connecting carrier pipelines, the crude oil nomination will be rejected and sent back to Customer, with reasons for the rejection and, if applicable, instructions to resubmit a revised crude oil nomination.
>
>…
>
>Customer shall ensure that crude oil nominations do not result in the tank exceeding its maximum/minimum working volume, except for an intentional tank roof landing as permitted herein.

42. Paragraph 7 of the Terminal Rules provides, concerning Receipt and Delivery Batches: "For avoidance of doubt, Operator reserves the right to restrict deliveries to and from Wildhorse Terminal in the event such deliveries would result in Customer's tank being over-filled or the tank roof ending up below its low working level (unless for an intentional roof landing as permitted herein)."

**D.**  ***Conditions Precedent***

43. All conditions precedent, if any, required to bring this suit and the claims herein have occurred or have been waived.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**
**Breach of Contract**
**(PetroLama)**

44. All allegations contained in this *Complaint* are fully incorporated herein.

45. The PetroLama Storage Agreements are valid and enforceable contracts.

46. PetroLama breached the PetroLama Storage Agreements by: (1) failing to post the required letters of credit for 9 months' Storage Fees in favor of Keyera; and (2) failing to pay any Storage Fees to Keyera from July 2021 to present.

47. PetroLama's breach has caused damage to Keyera, and as of the date of filing, the past due Storage Fees, for services rendered by Keyera at the Wildhorse Terminal from July 2021 to July 2022, owed by PetroLama to Keyera total $8,454,193.55.

48. PetroLama's breach has further caused future damages to Keyera in that the contractual terms of the PetroLama Storage Agreements were for a 6-year term and a 4-year term, respectively, each subject to an annual fee escalation of 2%, meaning the total value of the contracts, of which Keyera has been wrongfully deprived, is approximately $41,704,364.32, plus such consequential and incidental damages or losses.

49. Further, as a result of PetroLama's breach of the PetroLama Storage Agreements, Keyera has found it necessary to employ an attorney to enforce its legal rights, and Keyera seeks recovery of its attorneys' fees and expenses pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code.

## SECOND CLAIM FOR RELIEF
**Declaratory Judgment**
**(PetroLama and BB Energy)**

50. All allegations contained in this *Complaint* are fully incorporated herein.

51. An actual controversy exists between the parties concerning the rights, titles, interests and priorities in and to the approximately 125,701 barrels of Product presently stored in the PetroLama tanks 202, 204, 214, and 216 and held as linefill at the Wildhorse Terminal (the "Disputed Oil").

52. The Disputed Oil was delivered to the Wildhorse Terminal in accordance with PetroLama's obligations to provide linefill and tank bottoms.

53. Prior to the time of delivery of the Crude Storage Notice to Keyera and BB Energy, PetroLama had triggered a Customer Event of Default and Keyera was entitled to exercise all applicable remedies, including without limitation enforcement or foreclosure of its warehouse lien in, to and covering such Disputed Oil.

54. The Disputed Oil was in the possession of PetroLama at the time of delivery of the Crude Storage Notice to Keyera and BB Energy, and notwithstanding the Crude Storage Notice, the Disputed Oil remained in the possession of PetroLama, and such possession was further entrusted to PetroLama by BB Energy with the power to continue to store the same in PetroLama's assigned tanks at the Wildhorse Terminal with the express permission and authority of BB Energy, with the express knowledge that warehouse liens would be issued with respect to such Disputed Oil stored there.

55. No payment for Storage Fees relative to the Disputed Oil has ever been made to Keyera either prior to or after delivery of the Crude Storage Notice, and pursuant to the PetroLama Storage Agreements and applicable law, Keyera holds, is entitled to assert, and has asserted its valid contractual and statutory warehouse lien in and to the Disputed Oil pursuant to Section 7.209 of the Texas Business and Commerce Code.

56. Keyera has had and continues to have possession of the tanks holding the Disputed Oil and all of the Disputed Oil therein, and its perfected warehouse lien in and to the Disputed Oil, to secure payment of all Storage Fees plus any allowable expenses incurred in respect thereof, constitutes a valid, first and prior interest in and to the Disputed Oil, superior to all other rights, titles or interests therein.

57. PetroLama and BB Energy claim or may claim some right, title or interest in and to the Disputed Oil that may be alleged to conflict with the rights, titles and interests of Keyera therein or the claimed priority of its interest in and to the Disputed Oil, creating a controversy concerning those matters for which a judicial declaration is sought in this *Complaint*.

58. Pursuant to Section 2.710 of the Texas Business and Commerce Code, Keyera has or will shortly after the filing of this lawsuit deliver notice of sale of the Disputed Oil to PetroLama and BB Energy, specifically noting such sale shall be subject to the declaration, by this Court, of the rights, titles, and interests of the parties in and to the Disputed Oil and the respective priorities thereof.

59. Keyera, therefore, requests the Court take judicial cognizance of this action and render a declaratory judgment in Keyera's favor and against PetroLama and BB Energy, determining:

    a. Keyera holds a valid statutory and/or contractual warehouse lien in and to the Disputed Oil; *and*

    b. Keyera's warehouse lien in the Disputed Oil is superior and prior to any rights, titles and/or interests claimed in the same by PetroLama or BB Energy in the amount of and to the extent of the unpaid indebtedness owed by PetroLama to Keyera under the PetroLama Storage Agreements; *and*

    c. Keyera is legally authorized to assert, enforce and foreclose its warehouse lien in and to the Disputed Oil pursuant to § 7.210 Texas Business and Commerce Code, and any and all other applicable laws, via either public or private sale, and to retain the proceeds of such sale to satisfy its warehouse lien stemming from PetroLama's past-due and future contractual balances

      owed for Storage Fees and any other allowable expenses incurred in connection with the storage of the Disputed Oil under the PetroLama Storage Agreements; *and*

    d.    Either PetroLama and/or BB Energy shall have the right to redeem such Disputed Oil within a time set by the Court with respect to the intended private or public sale of the same to enforce and foreclose Keyera's warehouse lien.

60.    Further, Keyera requests such other or further declarations from the Court as may be deemed necessary and just to effect the foregoing requested relief.

### THIRD CLAIM FOR RELIEF
**Judicial Foreclosure of Warehouse Lien against Disputed Oil**
**(PetroLama and BB Energy)**

61.    All allegations contained in this *Complaint* are fully incorporated herein.

62.    Pleading alternatively in connection with the Second Claim for Relief, Keyera respectfully requests the Court authorize judicial foreclosure of Keyera's warehouse lien by directing or appointing the appropriate authority to sell the Disputed Oil pursuant to Section 7.210 of the Texas Business and Commerce Code, subject to the affect of and full value of Keyera's warehouse lien therein, provide all necessary notices attendant to such sale, and report the sale of the Disputed Oil for Keyera's benefit in accordance with applicable law and procedure.

### FOURTH CLAIM FOR RELIEF
**Indemnification**
**(PetroLama)**

63.    All allegations set forth in this *Complaint* are fully incorporated herein.

64.    Section 16.1 of the Storage Agreements provides in applicable part:

> <u>Parties' Obligation to Indemnify and Hold Harmless.</u> Each Party shall indemnify, defend, and hold harmless the other Party, its

respective parents, subsidiaries, Affiliates, successors and assigns and each of their officers, directors, managers, equity holders, employees and agents (the "**Indemnitees**") from any Claims or Losses to the extent resulting from the indemnifying Party's breach of any representation, warranty or covenant contained in this Agreement.

65. As a result of PetroLama's contractual breaches of the Storage Agreement, BB Energy may assert or has asserted claims against Keyera concerning the Disputed Oil.

66. Keyera is entitled to indemnity and to recover from PetroLama all losses, including attorneys' fees, expenses, and costs of defense, sustained by Keyera, if any, to BB Energy.

### PRAYER FOR RELIEF

WHEREFORE, Keyera prays the Court will grant judgment in its favor and against PetroLama and BB Energy in accordance with the allegations herein, and specifically that Keyera be awarded:

1. judgment for damages in Keyera's favor and against PetroLama in an amount determined at trial, but in no event less than the sums alleged herein, plus any and all consequential and incidental losses to which Keyera is deemed entitled;

2. a declaratory judgment in Keyera's favor and against PetroLama and BB Energy as set forth above, finding Keyera's warehouse lien in and to the Disputed Oil to be valid, prior and superior to any other rights, titles and interests therein, including those of PetroLama and BB Energy, and specifically authorizing Keyera's public or private sale of the Disputed Oil pursuant to Section 7.210 of the Texas Business and Commerce Code to enforce and foreclose that warehouse lien to the extent determined by the Court;

3. alternatively, an order authorizing, in Keyera's favor and against PetroLama and BB Energy, the judicial foreclosure of Keyera's warehouse lien as against the Disputed Oil;

4. an assessment in Keyera's favor and against PetroLama and, to the extent allowed by law, BB Energy, of pre-judgment interest at the maximum amount allowed by law;

5. an assessment in Keyera's favor and against PetroLama of post-judgment interest at the maximum amount allowed by law;

6. an assessment in Keyera's favor of all of its attorneys' fees, expenses, consequential and incidental damages including the costs incurred in the bringing of this action; and

7. the provision in Keyera's favor and against Defendants of such other and further relief, at law or in equity, to which Keyera may be justly entitled.

Respectfully submitted,

*s/ David H. Herrold*

**DAVID H. HERROLD**
**ATTORNEY-IN-CHARGE**
Texas Bar No. 24107029
S.D. Texas Bar No. 3542296
dherrold@burkebog.com

**SCOTT K. KOELKER**
Texas Bar No. 24065569
S.D. Texas Bar No. 1003775
skoelker@burkebog.com

**WHITNEY L. WARREN**
Texas Bar No. 24084395
S.D. Texas Bar No. 2933168
wwarren@burkebog.com

**ALEXIA NICOLOULIAS**

        Texas Bar No. 24125817
        S.D. Texas Bar No. 3748029
        *anicoloulias@burkebog.com*

        With the law firm of:
        **BURKE BOGDANOWICZ PLLC**
        1201 Elm Street, Suite 4000
        Dallas, TX 75270
        Tel/Fax 214.888.2824

        **Attorneys for the Plaintiff,**
        **KEYERA ENERGY INC.**