United States District Court
Southern District of Texas
**ENTERED**
July 26, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KEYERA ENERGY INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-2919 |
| | § | |
| PETROLAMA ENERGY CANADA INC., | § | |
| AND BB ENERGY USA LLC, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a motion to dismiss, or in the alternative, to stay, filed by Defendant BB Energy USA LLC ("BB Energy") (Dkt. 23). After carefully reviewing the motion, response, reply, and the applicable law, the Court finds that Defendant BB Energy's motion should be **GRANTED**.

### BACKGROUND

Petrolama Energy Canada, Inc. ("Petrolama") entered into two storage agreements with Keyera Energy, Inc. ("KEI") to store crude oil in KEI's storage facility located in Oklahoma ("Wildhorse Terminal"). (Dkt. 1 at 5). KEI claims that Petrolama defaulted on its obligations under the agreements. (Dkt. 1 at 6). BB Energy then (1) entered into a storage agreement with KEI to store its crude oil at the Wildhorse Terminal, and (2) purchased the crude oil that Petrolama was already storing in the Wildhorse Terminal ("Petrolama tanks"). (Dkt. 1 at 8). This dispute centers upon who owns the 125,701 barrels of crude oil ("Disputed Oil") that is presently stored in the Petrolama tanks located in the Wildhorse Terminal. (Dkt. 1 at 12).

—*The Oklahoma Case*

BB Energy filed suit against KEI in the District Court of Lincoln County, Oklahoma on August 19, 2022 ("the Oklahoma state court"), seeking a declaratory judgment against KEI, a preliminary and permanent injunction, and damages for breach of contract. (Dkt. 23-1). KEI removed the case to the U.S. District Court for Western District of Oklahoma on August 29, 2022 ("the Oklahoma federal court"). (Dkt. 23-2). BB Energy filed a motion to remand on September 22, 2022, arguing that (1) both BB Energy and KEI are foreign companies, thus, (2) the Oklahoma federal court lacked subject matter jurisdiction. Agreeing with BB Energy, the Oklahoma federal court remanded the case to the Oklahoma state court on June 5, 2023. *BB Energy USA LLC v. Keyera Energy Inc.*, No. CIV-22-756-SLP, 2023 WL 3818362, at *6 (W.D. Okla. June 5, 2023).

—*The Texas Case*

On August 26, 2022, while the Oklahoma case was pending in Oklahoma state court, KEI filed this suit against BB Energy and Petrolama. (Dkt. 1). On December 1, 2022, KEI and Petrolama entered into an Agreed Final Judgment, wherein the claims against Petrolama were dismissed and only BB Energy remained. (Dkt. 25).

KEI seeks a declaratory judgment against BB Energy stating that (1) KEI holds a valid warehouse lien on the Disputed Oil, (2) its warehouse lien is superior to any other rights, interests, and/or titles claimed by BB Energy, and (3) KEI is legally authorized to assert, enforce, and foreclose its warehouse lien in and to the Disputed Oil. (Dkt. 1 at 14). Alternatively, KEI asks the Court to authorize a judicial foreclosure of KEI's warehouse lien against BB Energy. (Dkt. 1 at 14). On November 16, 2022, BB Energy filed a motion to dismiss or, in the alternative, to stay. (Dkt. 23). BB Energy argues this Court should

dismiss for lack of subject matter jurisdiction or under the first-to-file rule, or, alternatively, to stay the case pending the Oklahoma federal court's ruling on BB Energy's Motion to Remand. (Dkt. 23).

## LEGAL STANDARD

A motion filed under Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting that federal subject matter jurisdiction exists bears the burden of proving it by a preponderance of the evidence. *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012). Under Rule 12(b)(1), the court may consider any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Walch v. Adjutant General's Department of Texas*, 533 F.3d 289, 293 (5th Cir. 2008).

## ANALYSIS

The dispute before the Court concerns whether Plaintiff KEI's principal place of business ("PPB") is in Texas (as KEI claims) or in Canada (as BB Energy claims). The Court's jurisdiction hinges on this question because Defendant BB Energy, an LLC whose members live in England, is a foreign citizen.[1] Thus, if KEI's PPB is in Texas, the parties would be diverse and the Court would have jurisdiction to hear this dispute; if KEI's PPB

---

[1] KEI's complaint listed BB Energy's citizenship as either Curaçao or Dubai. (Dkt. 1 at 3). Regardless, the parties do not dispute that BB Energy is a foreign corporation.

is in Canada, the parties would not be diverse and the Court would not have jurisdiction over their dispute.[2]

The Court agrees with BB Energy that KEI's PPB is in Canada. Thus, the Court finds that it lacks subject matter jurisdiction, and the case should therefore be dismissed.

Federal courts have "original jurisdiction" over civil actions where the parties are diverse and the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a). When determining citizenship for diversity, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business . . . ." 28 U.S.C. § 1332(c)(1). "Courts have recognized that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business." *Coghlan v. Blue Cross Blue Shield of Texas*, Civil Action No. H-12-2703, 2013 U.S. Dist. LEXIS 5111, 2013 WL 150711 (S.D. Tex. Jan. 14, 2013) (citations omitted) (internal quotation marks omitted). The Supreme Court defines PPB as "the place where a corporation's officers direct, control, and coordinate the corporation's activities [known as its] 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93, 130 S. Ct. 1181, 175 L. Ed. 2d 1029 (2010).

---

[2] The fact that KEI was incorporated in Delaware does not affect this jurisdictional question. A party who is a citizen of both a foreign country and a state (such as Canada and Delaware) is considered to be a foreign party for diversity-jurisdiction purposes. *See Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1152 (5th Cir. 1985) (finding that a corporate citizen of New Jersey and Liberia is not diverse from a Singaporean opposing party); *Panalpina Welttransport GMBH v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985) ("[A] party cannot [] pick and choose among the places of citizenship ignoring one or more in an effort to preserve diversity jurisdiction.").

In determining whether KEI's PPB is in Canada or Texas, the Court considered declarations of KEI corporate officers and KEI business records. For the reasons discussed below, the Court finds these sources support BB Energy's argument that KEI's PPB is in Canada.

—*The Wright and Urquhart Declarations*

In arguing that its PPB is in Texas, KEI relies heavily on the declaration made by KEI's treasurer, Mark Wright, who works in Houston. (Dkt. 23-11). But Wright's declaration must be considered alongside the declaration of KEI's president, Jamie Urquhart, who works in Canada. (Dkt. 28-1). Reading the declarations together, the Court finds that Wright does not sufficiently "direct, control, and coordinate" KEI's activities to create a "nerve center" for KEI in Houston.

Wright indicates in his declaration that he has "overall responsibility for executing [KEI's] day-to-day functions, growth and development planning, operational oversight and decision-making, and contract negotiation and execution." (Dkt. 23-11). However, the declaration suggests that Wright's authority is limited. For example, Wright indicates that he signs approximately 75 to 80% of KEI's contracts, but he can only sign and authorize certain contracts—*i.e.*, contracts amounting to five million dollars or less. (Dkt. 23-11). In addition, Wright never indicates who has the authority to sign the higher value contracts. (Dkt. 23-11). A certain, limited degree of authority on the part of a corporate officer does not meet the "direct, controls, and coordinates" standard for a PPB set out in *Hertz*. *See Balachander v. AET Inc. Ltd.*, No. CIV.A. H-10-4805, 2011 WL 4500048, at *7 (S.D. Tex. Sept. 27, 2011) (finding that, despite Houston officers having some authority to enter contracts that bind the company and to hire and fire employees below the level of senior

vice president, the principal place of business was in Kuala Lumpur, where high-level officers set the corporation's policies and direction). Thus, Wright's declaration alone is insufficient to show that KEI's PPB is in Houston.

Urquhart's declaration confirms that Wright has limited authority and further indicates that there are high-level officers in Canada who direct, control, and coordinate KEI's corporative activities. (Dkt. 28-1). Urquhart states that "while the directors and officers may set broad directions, goals, or targets for KEI or discuss the business objectives of KEI, the directors and officers do not themselves direct, control, or coordinate KEI's business activities." (Dkt. 28-1). While Urquhart's declaration parrots the standard articulated in *Hertz* in an effort to establish Houston as KEI's nerve center, mere recitations of the *Hertz* standards is not enough to establish a company's PPB. *See Lewis Mech. Sales, Inc. v. Union Standard Ins. Grp.*, LLC, No. 2:16-CV-00496, 2017 WL 11246844, at *5 (S.D. Tex. Nov. 8, 2017) (finding such conclusory statements do not establish by a preponderance of the evidence a corporation's PPB).

Urquhart's declaration instead suggests that Wright is responsible for the day-to-day operations of KEI while the officers who reside in Canada are responsible for KEI's big-picture operations. (Dkt. 28-1). Courts have consistently held that the place where day-to-day operations occur do not establish a company's nerve center where there is another place that is responsible for the direction, control, and coordination of the company. *See Elizondo v. Keppel Amfels, LLC*, No. 1:14-CV-220, 2015 WL 1976434, at *7 (S.D. Tex. May 1, 2015) (rejecting a PPB-in-Texas argument when most of a corporation's high-level officers made big-picture decisions from Singapore and the two officers in Texas were (1) subordinate to the officers in Singapore and (2) only responsible for day-to-day

operations); *see also Hertz Corp.*, 559 U.S. at 96 ("[I]f the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). Therefore, Urquhart's declaration, read alongside Wright's declaration, indicates that Wright has limited authority, whereas the top officers in Canada—*i.e.*, KEI's President and Vice President—are the nerve center for KEI.[3] Thus, the declarations together suggest that KEI's PPB is in Canada, not in Houston.

—*Business Records*

BB Energy further argues that KEI's Management Services Agreement (MSA) indicates that Texas is not KEI's PPB. Reviewing the MSA alongside Wright's declaration, the Court agrees. (Dkt. 23 at 16).

Per the MSA, KEI delegated managerial, administrative, and support services to Keyera Partnership, which is also located in Canada. (Dkt. 23-10). Keyera Partnership was to provide KEI certain services including: "strategic and long-term planning"; "budget planning and preparation"; and "evaluating acquisition and other corporate development opportunities for KEI." (Dkt. 23-10 at 1). These services duplicate several of Wright's

---

[3] The fact that KEI's President and Vice President are based out of Canada distinguishes this case from *Astra Oil Trading NV v. Petrobras Am. Inc*, which KEI cites in support of its PPB-in-Texas argument. No. CIV.A. H-09-1274, 2010 WL 3069793 (S.D. Tex. Aug. 4, 2010). In *Astra Oil*, the location of a subsidiary company's CEO (California) was found to be the subsidiary company's "nerve center." *Id.* at *6. But the CEO in *Astra Oil* had more responsibility than Wright—*i.e.*, the CEO in *Astra Oil* (1) had significant authority to negotiate and sign contracts worth hundreds of millions of dollars, (2) directed and supervised other subsidiary companies, and (3) contributed to setting the strategy and direction for the company and for other subsidiaries. *Id.* at 4-5. Thus, *Astra Oil* does not support KEI's PPB-in-Texas argument.

stated responsibilities. (Dkt. 23-11). Thus, the Court finds that the MSA also suggests that KEI's PPB is in Canada, not Houston.

BB Energy also presents the Court with various corporate filings of KEI, all of which state that KEI's address is in Canada. (Dkts. 23-6, 23-7, 23-8). For example, an inquiry with the Texas Secretary of State's office provided KEI's home office address as 600 144 – 4th Ave. SW Calgary, Alberta T2P 3N4 Canada. (Dkt. 23-6). In KEI's Annual Franchise Tax Report from Delaware, KEI listed the same address listed above as its PPB. (Dkt. 23-7). In addition, in an Oklahoma Secretary of State filing, KEI again listed its address as Calgary, Canada. The Supreme Court has stated that public filings alone are insufficient to establish a company's PPB without more evidence; however, corporate documents can be used to bolster other evidence of a company's PPB (here, the Wright and Urquhart declarations). *Hertz*, 559 U.S. at 97; *see also Origins Recovery of Tex. LLC v. Beech St. Corp.*, No. A-13-CA-300-SS, 2013 WL 12131204, at *2 (W.D. Tex. June 10, 2013) (a tax form provided evidence contradicting a corporation's claimed citizenship, but only because there was other competent evidence, including sworn statements from corporate executives). Furthermore, the Court is not persuaded by KEI's explanation for these filings—*i.e.*, "business convenience" due to the MSA. (Dkt. 28 at 19). Thus, the Court finds that the corporate filings listing a Canada address further indicates that KEI's PPB is in Canada, not Houston.[4]

---

[4] KEI claims that the notice provisions in the storage agreements at issue in this case require all notice and correspondence be sent to a Houston address, which Wright claims is "KEI's headquarters." (Dkt. 23-11). However, this evidence fails to show that the Houston address represents anything "more than just a mail drop box" for KEI in the United States. *Hertz*, 559 U.S. at 97.

Given the evidence before the Court, the Court finds that KEI's PPB is in Canada, not Houston.[5] Therefore, the Court finds that it lacks subject matter jurisdiction over this dispute and that this case should be dismissed.

## CONCLUSION

Defendant BB Energy's Motion to Dismiss (Dkt. 23) is **GRANTED** because the Court finds that both parties are foreign companies; thus, the Court finds it lacks subject matter jurisdiction. Therefore, all claims against Defendant BB Energy are **DISMISSED WITH PREJUDICE.**

SIGNED at Houston, Texas on ___July 26___ 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[5] This finding aligns with the Oklahoma federal court's recent determinations that (1) KEI's PPB is in Canada, thus (2) the Court lacked subject matter jurisdiction over the case. *BB Energy USA LLC*, No. CIV-22-756-SLP, 2023 WL 3818362, at *6 (W.D. Okla. June 5, 2023). While the Oklahoma federal court's ruling has no estoppel effect on the Court, the Court agrees with the Oklahoma federal court's analysis.